**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHERYL A. VALADEZ | : | CASE NO. 3:08CV00065(AWT) |
| | : | |
| V. | : | |
| | : | |
| TOWN OF ROCKY HILL, ET AL. | : | JANUARY 14, 2010 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The Defendants EDWARD A. PERUTA, LOIS PERUTA, AND JEFFREY HARRIS, by and through their undersigned counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, hereby submit a Memorandum of Law in Support of their Motion for Summary Judgment as to Count Five of the Plaintiff's Complaint dated January 14, 2008.[1]

**I.   BACKGROUND**

Jeffrey Harris ("Harris") invited Cheryl Valadez ("Plaintiff" or "Valadez") to live with him at 29-A Carillon Drive in Rocky Hill, Connecticut, in 1997. (Ex. A at 25-26, Deposition of Cheryl Valadez (hereinafter, "Valadez Dep.")  The property at 29-A Carillon Drive, Rocky Hill, Connecticut, is a condominium ("Condominium") owned by Harris. (Ex. A at 49, Valadez Dep.; Ex. K, Deed to 29-A Carillon Drive, Rocky Hill, Connecticut (hereinafter, "Deed").  Harris

---

[1] **Exhibit List to Defendants Edward Peruta, Lois Peruta, and Jeffrey Harris Memorandum of Law in Support of Motion for Summary Judgment**

| Exhibit | Description | Foundation |
|---|---|---|
| Ex. A | Deposition Transcript of Cheryl Valadez (12/05/2008) | Certification |
| Ex. B | Harris-Valadez Contract (10/31/2005) | Ex. A at 38-39 |
| Ex. C | Jeffrey Harris Statement (11/05/2007) | Notary |
| Ex. D | General Power of Attorney (10/30/2007) | Ex. H |
| Ex. E | George Burns Affidavit (12/01/2009) | Notary |
| Ex. F | Clyde Tyler Affidavit (11/30/2009) | Notary |
| Ex. G | Deposition of Sharon Hartstein (02/26/2009) | Certification |
| Ex. H | Edward A. Peruta Affidavit | Notary |
| Ex. I | Lois Peruta Affidavit | Notary |
| Ex. J | Letter from Chief of Police Michael D. Custer (11/19/2007) | Ex. L |
| Ex. K | Deed for 29-A Carillon Drive, Rocky Hill, CT | Ex. L |
| Ex. L | Rachel M. Baird Declaration | Declaration |
| Ex. M-R | Case Law | N/A |

owned the Condominium before Valadez moved in with him in 1997.  (Ex. A at 49, Valadez Dep.)  Valadez never made any mortgage or rental payments for the Condominium.  (Ex. A at 50, Valadez Dep.)  Valadez did not have a lease agreement with Jeffrey Harris to live and/or stay at the Condominium. (Ex. A at 50, Valadez Dep.)

In October of 2005, Valadez signed a written agreement with Harris that she would immediately the Condominium in exchange for the sum of ten-thousand dollars ($10,000.00) to be paid by Harris.  (Ex. A at 38-39, Valadez Dep.; Ex. B, Harris-Valadez Contract.)  Valadez returned to Connecticut and the Condominium in December 2005.  (Ex. A at 45, Valadez Dep.)  On the evening of October 28, 2007, Valadez and Jeffrey Harris had a dispute after which Jeffrey Harris left the Condominium and went out to his truck.  (Ex. A at 32, 35, Valadez Dep.)

Valadez barricaded and/or locked Jeffrey Harris out of the Condominium.  (Ex. A at 35, Valadez Dep.)  Harris attempted to re-enter his Condominium and ultimately broke down the front door to gain entry as he did not have the keys.  (Ex. A at 34-35, Valadez Dep.)  Harris left the Condominium late in the evening of October 28, 2007, or the early morning of October 29, 2007.  (Ex. A at 51, Valadez Dep.)

On October 29, 2007, Harris sustained burns in a barn fire resulting in his hospitalization at the Bridgeport Hospital Burn Unit. (Ex. C. Statement of Jeffrey Harris (hereinafter, "Harris Statement.")  On October 30, 2007, Jeffrey Harris executed a General Power of Attorney, designating Edward Peruta as his agent and granting him power over his real estate and real estate rights.  (Ex. C, See Harris Statement; Ex. D, Power of Attorney, Ex. H, Affidavit of Edward Peruta (hereinafter, "Peruta Aff.") ¶¶ 7, 8.)  On October 30, 2007, Jeffrey Harris requested that Edward Peruta go to his Condominium at 29-A Carillon Drive to instruct Valadez to vacate the property.  (Ex. C, Harris Statement, Ex. H, Peruta Aff. ¶ 7.)

Edward Peruta proceeded to the Rocky Hill Police Department and requested that officers accompany him to the Condominium while he entered the property to have Valadez vacate the premises. (Ex. E, Affidavit of Sergeant George Burns (hereinafter, "Burns Aff.") ¶ 4.) Sergeant George Burns and Officer Clyde Tyler were dispatched to accompany Edward Peruta to the Condominium in order to maintain the peace during the contact with Valadez. (Ex. E, Burns Aff. ¶ 6; Ex. F, Affidavit of Officer Clyde Tyler (hereinafter, "Clyde Aff.") ¶ 5.) Upon arrival at 29-A Carillon Drive, Edward Peruta proceeded to the rear of the Condominium and called out to Valadez that there were two individuals out front who wanted to speak with her. (Ex. A at 54-55, 137, Valadez Dep.) Valadez exited the rear door of the Condominium and walked around to the front of the Condominium where she observed Edward Peruta and two Rocky Hill police officers at the front door. (Ex. A at 55-6, 146, Valadez Dep.) Edward Peruta told Valadez that he had a Power of Attorney, was acting on behalf of Jeffrey Harris, and demanded that Valadez vacate the Condominium. (Ex. A at 61, Valadez Dep.; Ex. G at 26, Hartstein Dep.) Valadez ran into the woods and stayed there overnight. (Ex. A at 70-71, 155, Valadez Dep.)

Edward Peruta entered the Condominium on October 30, 2007, only after Valadez had left the area. (Ex. G at 28, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 11.) The interior of the Condominium was cluttered and uninhabitable on October 30, 2007. (Ex. G at 29, 30, 35, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 10.) The next morning of October 31, 2007, Valadez called a neighbor, Sharon Hartstein, to pick her up and take her back to the Condominium. (Ex. A at 71, Valadez Dep.) Sharon Hartstein ("Hartstein") resided at 27-B Carillon Drive in Rocky Hill, Connecticut, from at least 1997 through at least the date of her deposition taken in the instant matter on February 26, 2009. (Ex. A at 25, Valadez Dep.; Ex. G at 5, Hartstein Dep.) Hartstein's residence at 27-B Carillon Drive is adjacent to and on the left of Jeffrey Harris'

3

Condominium at 29-A Carillon Drive as one stands in the parking lot facing the front entry of the Condominium. (Ex. G at 17, Hartstein Dep.)

Valadez stayed in Hartstein's car in the parking lot and did not enter the Condominium when she returned to the Condominium parking lot with Hartstein on October 31, 2007. (Ex. A at 71, Valadez Dep.) Valadez did not observe anything that Edward Peruta did or did not do while inside the Condominium on October 30, 2007, or October 31, 2007. (Ex. A at 150, 153, 157-158, Valadez Dep.) Valadez did return to the Condominium later on October 31, 2007, and continued to stay there periodically. (Ex. A at 75-77, 79-80, Valadez Dep.) Valadez' claimed possessions were at the Condominium when she returned on October 31, 2007, and took pictures. (Ex. A at 90-91, 211, Valadez Dep.) Valadez had access to her possessions after October 31, 2007, and arranged for her daughter to take them but her daughter did not. (Ex. A at 110-111, Valadez Dep.)

Valadez was represented on October 31, 2007, and thereafter, by Attorney Raymond Lefoll regarding her complaint about the events of October 30, 2007, and October 31, 2007, at the Condominium. (Ex. G at 69, 71-72, Hartstein Dep.) Valadez filed a complaint with the Rocky Hill Police Department alleging a criminal lockout from the Condominium which she alleged took place on October 30, 2007. (Ex. J, Letter from Chief of Police Michael D. Custer to Raymond LeFoll, dated November 19, 2007.) Chief Michal D. Custer of the Rocky Hill Police Department informed Attorney LeFoll that Valadez' complaint of criminal lockout was unsupported by the evidence. (Ex. J, Letter from Chief of Police Michael D. Custer to Raymond LeFoll, dated November 19, 2007.) Valadez never filed any complaint in state housing or civil court pursuant to Connecticut General Statutes, § 47a-43, alleging unlawful entry and detainer,

4

within the six month statute of limitations set forth under such statute. (Ex. A at 212, Valadez Dep.; Ex. L, Declaration of Rachel M. Baird (hereinafter, "Baird Dec."), ¶ 4.)

Jeffrey Harris, as the owner and resident of the Condominium, did not trespass upon the Condominium property on October 30, 2007, or October 31, 2007. (Ex. A at 25, 26, 49, 202, Valadez Dep.; Ex. B, Harris-Valadez Contract; Ex. C, Harris Statement.) Edward Peruta, holding a Power of Attorney on behalf of Jeffrey Harris, did not trespass upon the Condominium property on October 30, 2007, or October 31, 2007. (Ex. A at 25, 26, 49, Valadez Dep.; Ex. B, Harris-Valadez Contract; Ex. C, Harris Statement; Ex. D, Power of Attorney.) Lois Peruta, as an invitee of Edward Peruta, did not trespass upon the Condominium property on October 30, 2007, or October 31, 2007. (Ex. A at 25, 26, 49, Valadez Dep.; Ex. B, Harris-Valadez Contract; Ex. C, Harris Statement; Ex. D, Power of Attorney; Ex. H, Peruta Aff. ¶ 18.)

### A. The Defendants Edward Peruta, Lois Peruta, And Jeffrey Harris

#### 1. Lois Peruta

Valadez did not witness Lois Peruta's presence at the Condominium on October 30, 2007, or October 31, 2007. (Ex. A at 68, 158, 167, 173, Valadez Dep.) Lois Peruta did not touch Valadez' possessions at the Condominium on October 30, 2007, or October 31, 2007. (Ex. G at 47-48, 54, 72, 116, Hartstein Dep.; Ex. I, Affidavit of Lois Peruta (hereinafter, "Lois Peruta Aff.") ¶ 7.) Lois Peruta did not remove Valadez' possessions from the Condominium on October 30, 2007, or October 31, 2007. (Ex. G at 63, Hartstein Dep; Ex. I, Lois Peruta Aff. ¶ 8.) Lois Peruta did not place Valadez' possessions in a bag with bleach on October 30, 2007, or October 31, 2007. (Ex. G at 72, 73, 74, 115, 116, Hartstein Dep.; Ex. I, Lois Peruta Aff. ¶ 9.) Lois Peruta did not place Valadez' possessions in a dumpster on October 30, 2007, or October 31, 2007. (Ex. G at 52, Hartstein Dep.; Ex. I, Lois Peruta Aff. ¶ 10.) Lois Peruta did not

physically touch Valadez in any manner on October 30, 2007, or October 31, 2007.  (Ex. A at 204-205, Valadez Dep.; Ex. I, Lois Peruta Aff. ¶ 11.)  Lois Peruta did not tell any police officer to touch Valadez in any manner on October 30, 2007, or October 31, 2007.  (Ex. A at 158, 167, Valadez Dep.; Ex. I, Lois Peruta Aff. ¶ 12.)  Valadez has no information about any conduct alleged against Lois Peruta in Count Five of the Complaint.  (Ex. A at 173, Valadez Dep.)

        2.       Edward Peruta

Valadez did not witness Edward Peruta's presence inside the Condominium on October 30, 2007, or October 31, 2007.  (Ex. A at 68, 173, Valadez Dep.)  Valadez is not a witness to Edward Peruta's presence at the Condominium on October 31, 2007.  (Ex. A at 167, Valadez Dep.)  Edward Peruta did not touch Valadez' possessions at the Condominium on October 30, 2007, or October 31, 2007.  (Ex. A at 54, 90-91, 173, Valadez Dep.; Ex. G at 47-48, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 12.)  Edward Peruta did not remove Valadez' possessions from the Condominium on October 30, 2007, or October 31, 2007.  (Ex. A at 90-91, 173, 203, Valadez Dep.; Ex. G at 63, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 13.)  Edward Peruta did not place Valadez' possessions in a bag with bleach on October 30, 2007, or October 31, 2007.  (Ex. G at 72, 73, 74, 115, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 14.)  Edward Peruta did not place Valadez' possessions in a dumpster on October 30, 2007, or October 31, 2007.  (Ex. A at 203, Valadez Dep.; Ex. G at 52, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 15.)  Edward Peruta did not physically touch Valadez in any manner on October 30, 2007, or October 31, 2007.  (Ex. A at 204, Valadez Dep.; Ex. G at 27, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 16.)  Edward Peruta did not tell any police officer to touch Valadez in any manner on October 30, 2007, or October 31, 2007.  (Ex. A at 168, Valadez Dep.; Ex. H, Peruta Aff. ¶ 17.)  The police officers at the Condominium on

6

October 30, 2007, and October 31, 2007, were not under the command of Edward Peruta. (Ex. A at 169, Valadez Dep.; Ex. H, Peruta Aff. ¶ 19.)

       3.     Jeffrey Harris

Jeffrey Harris was not at the Condominium on October 30, 2007, or October 31, 2007. (Ex. A at 157, Valadez Dep.; Ex. G at 72, Hartstein Dep.; Ex. C, Harris Statement.) Jeffrey Harris did not tell the police officers to touch Valadez at any time. (Ex. A at 158, 167, Valadez Dep.) Valadez's claim to possession of the Condominium was based on an announcement by Governor M. Jodi Rell that a man and a woman who live together for seven years are common law husband and wife in Connecticut. (Ex. A at 31, Valadez Dep.) Governor M. Jodi Rell never made any statement that a man and a woman who live together for seven years are common law husband and wife in Connecticut. Conn. Gen. Stat. § 46b-11; Boland v. Catalano, 202 Conn. 333, 339 (1987) ("We agree with the trial referee that cohabitation alone does not create any contractual relationship or, unlike marriage, impose other legal duties upon the parties. In this jurisdiction, common law marriages are not accorded validity."). Valadez told the police that her status as Jeffrey Harris' "common law wife" gave her more "pull" then Edward Peruta in deciding that she had the right to stay in the Condominium. (Ex. A at 61, Valadez Dep.) Valadez' claim that Edward Peruta was trespassing is based upon her denial that Edward Peruta possessed a Power of Attorney for Jeffrey Harris. (Ex. A at 218, Valadez Dep.) Edward Peruta was able to cancel Jeffrey Harris' cell phone and cable based on the Power of Attorney he held for Jeffrey Harris. (Ex. A at 67, Valadez Dep.; Ex. H, Edward Peruta Aff. ¶ 20.)

    **B.**    **Allegations In Count Five Of The Complaint**

Count Five of the Complaint contains subsections (a) through (h). In subsections (a) and (b), the Plaintiff alleges: (a) negligence by the Defendants as they should have been aware of a

7

substantial and justifiable risk that their conduct would violate the Plaintiff's rights; and (b) recklessness by the Defendants as they consciously disregarded a substantial and unjustifiable risk that their conduct would violate the Plaintiff's rights.  Subsections (g) and (h) allege negligent and intentional emotional distress, respectively, based on conduct alleged to have violated the Plaintiff's rights.  The specifically named rights that the Plaintiff alleges the Defendants violated are limited to (c) trespass to land, (d) dispossession, use or intermeddling of chattels, (e) trespass to chattels, (e) assault and battery, and (f) false imprisonment and unlawful restraint.   The Defendants have denied in their Answer that they committed trespass, dispossession, use or intermeddling of chattels, trespass to chattels, assault and battery, and false imprisonment and unlawful restraint against the Plaintiff.

II.     **LEGAL ARGUMENT**

   A.     **Standard Of Review For Summary Judgment**

Summary judgment is appropriate under Rule 56(c) of the Federal Rule of Civil Procedure when the moving party establishes that there is no genuine issue of material fact to be resolved at trial so the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Materiality is determined by the substantive law that governs the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the moving party's initial burden of demonstrating there is no genuine issue of material fact in dispute is satisfied if the moving party can point to an absence

of evidence to support an essential element of the non-moving party's claim. Celotex Corp., 477 U.S. at 322-23. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 111 (2d Cir. 1994). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his favor. Anderson, 477 U.S. at 249. In making this determination, the court draws all reasonable inferences in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmoving party. Id at 587. "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the non-moving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

> **B.** **The Plaintiff Fails To State A Claim For Assault And/Or Battery**

"An assault requires an overt act evidencing an attempt to do bodily harm, which falls short of an actual battery." Marczeski v. Law, 122 F.Supp.2d 315, 325 (D.Conn. 2000) (citing DeWitt v. John Hancock Mut. Life Insur. Co., 5 Conn.App. 590, 594 (1985)); see also Absher v. FlexiInternational Software, Inc., 2005 WL 2416203 * 9 (D.Conn. Sept. 30, 2005) (attached as Ex. M) (citing Marczeski, 122 F.Supp.2d at 325). "A battery is a completed assault." Absher, 2005 WL 2416203 * 9 (citing Smith v. City of New Haven, 166 F.Supp.2d 636, 644 (D.Conn. 2001)). "To establish a claim for assault and battery, a plaintiff must prove that a defendant used

9

force or violence and that the application of force or violence was unlawful." Id (citing Williams v. Lopez, 64 F.Supp.2d 37, 47 (D.Conn. 1999)).

In Connecticut, "[a]n actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." Alteiri v. Colasso, 168 Conn. 329, 333 (1975) (citations omitted). Valadez complains that the assault and/or battery was committed negligently and/or recklessly. (Compl. ¶ 43(a), (b).) The Complaint does not allege an intentional assault and/or battery. No genuine issue of material fact disputes that Defendants Edward Peruta, Lois Peruta, or Jeffrey Harris had no physical contact with Valadez on October 30, 2007, or October 31, 2007, or caused Valadez to fear imminent physical contact with one or more of them.

"In a few limited circumstances, Connecticut courts have recognized a cause of action against one person for encouraging the tortious conduct of another. This principle, as expressed in 4 Restatement (Second), Torts § 876 (1979), states that a person may be liable for 'harm resulting to a third person from the tortious conduct of another ... if he ... knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ...'" Calore v. Town of Stratford 2001 WL 58364 * 4 (Conn.Super. 2001 Jan. 8, 2001) (attached as Ex. N). "In general, civil liability for an assault and battery is not limited to the direct perpetrator of the act charged, but also extends to any person who by any means encourages or incites that act or aids and abets it." Umeugo v. Czajkowski, 1999 WL 311361 * 3-4 (Conn.Super. May 7, 1999) (attached as Ex. O). The Complaint alleges then that Edward Peruta, the only civilian Defendant present at the Condominium on October 30, 2007, when it is alleged that the assault and/or battery occurred, ordered the Rocky Hill police officers

10

to detain Valadez and commanded the police officers to grab and restrain Valadez. (Compl. ¶¶ 24, 25.) No genuine issue of material fact disputes that the police officers were not under the command of Edward Peruta. Valadez specifically does not recall Edward Peruta commanding the police officers to grab her. (Ex. A at 167-169, Valadez Dep.) Edward Peruta has denied that he ordered the police officers to detain, grab, or restrain Valadez. (Answer ¶ 24, 25.)

The police officers present at the Condominium on October 30, 2007, touched Valadez in the scope of their duty to maintain the peace as Valadez angrily advanced on Edward Peruta in an irate state, flailing her arms. (Ex. E, Burns Aff. ¶ 9; Ex. F, Tyler Aff. ¶ 8-9.) Instead of engaging in conduct showing a reckless disregard of consequences or committed negligently as alleged in the Complaint, Edward Peruta, in contacting law enforcement to accompany him to the Condominium, used every means available to a citizen to avoid physical contact with Valadez. There was no reason for Edward Peruta to know or be aware that Valadez would engage in assaultive behavior in the presence of police officers at her home such that she would need to be restrained, grabbed, or detained to avoid a breach of the peace.

Instead of engaging in threatening an assaultive conduct, if Valadez believed that Edward Peruta and/or the police officers were making forcible entry into the Condominium and detaining her or entering the Condominium and causing damage to her personal property such that she was required to commit a breach of the peace by engaging in threatening or assaultive conduct to avoid the entry, then her remedy was contained in Connecticut General Statutes, § 47a-43, which provides relief for damages to those seeking to regain possession following ejection from real property or suffering damages to their personal property.[2] Instead Valadez, through her attorney,

---

[2] General Statutes § 47a-43, "Complaint and procedure: Forcible entry and detainer; entry and detainer," provides: "(a) When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes

11

filed a criminal lockout complaint with the Rocky Hill Police Department, which would not have resulted in her repossession of the Condominium even had an arrest occurred. (Ex. J, Letter from Chief Michael D. Custer to Attorney Raymond LeFoll, dated November 19, 2007.) If Valadez, either instead of or in addition to the criminal lockout complaint, had filed an action pursuant to Connecticut General Statutes, § 47a-43, a state superior court judge would have been required to hear the complaint within eight days and award her relief and damages had she prevailed. A state superior court judge had the authority to order Valadez made whole and returned to possession of the Condominium by November 7, 2007, had Valadez pursued the specific remedy available for her alleged damages. Valadez' failure to pursue the remedy specifically intended for her damages reasonably implies that Valadez knew she would not have prevailed at a hearing intended to remedy the damages she now claims in this federal lawsuit.

    **C.**    **The Plaintiff Fails To State A Claim For False Imprisonment And Unlawful Restraint**

"False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another. False imprisonment is categorized as an intentional tort for which the remedy at common law was an action for trespass. In the case of a false imprisonment the detention must be wholly unlawful ... To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint

---

damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court.
(b) Such judge shall forthwith issue a summons to the party complained of, directed to some proper officer, to notify him to appear at a specified time and place, within eight days from the exhibition of such complaint, in the superior court for the judicial district wherein the injury complained of was done, to answer to the matters contained in the complaint.
(c) Such summons shall be served upon the party complained of six days inclusive before the day appointed for trial.
(d) If, after service of such summons, the party complained of does not appear and defend, the judge shall proceed in the same manner as if he were present."

was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." Lo Sacco v. Young, 20 Conn.App. 6, 19 (1989).  "More specifically it [false imprisonment] is any act directly or indirectly confining another within boundaries fixed by the defendant for any time whatever, however short, irrespective of whether harm is caused, if:

>    a. The act is designed to confine the other.
>
>    b. The other is conscious of the confinement.
>
>    c. The confinement is not consented to or is otherwise not privileged."

Nisa v. Dairy Mart, Inc., 1993 WL 103031 * 4 (Conn.Super. March 29, 1993) (attached as Ex. P). "False imprisonment is an intentional tort, and does not sound in negligence." Rivera v. Double A Transporation, Inc., 248 Conn. 21, 31 (1999).  Paragraphs 24 and 25 of the Complaint allege that Edward Peruta ordered the police officers to detain, grab, and restrain the Plaintiff. The Plaintiff can offer no evidence to support these allegations.  (Ex. A at 167-169, Valadez Dep.)  The police officers present at the Condominium on October 30, 2007, touched Valadez in the scope of their duty to maintain the peace as Valadez angrily advanced on Edward Peruta in an irate state, flailing her arms.  (Ex. E, Burns Aff. ¶ 9; Ex. F, Tyler Aff. ¶ 8-9.)  The police officers did not act at the command of Edward Peruta and their actions in maintaining the peace were privileged.  (Ex. E, Burns Aff. ¶ 6; Ex. F, Tyler Aff. ¶ 5.)  Even if Valadez was the subject of a lockout, as set forth in Connecticut General Statutes, § 47a-43, her assaultive and confrontational conduct would not have been justified as state statute provides for a peaceful means of resolving a lockout complaint which Valadez chose not to pursue.  The police officers acted to keep the peace which required stopping Valadez from physically confronting Edward Peruta, a privileged act within the scope of their lawful duties.  Finally, the absence of the element of intent to confine is supported by Valadez' freedom to run from the police officers and

13

Edward Peruta on October 30, 2007, without chase, once she ceased her assaultive and threatening conduct. (Ex. A at 70-71, 155, Valadez Dep.)

> D. **The Plaintiff Fails To State A Claim For Trespass To Land, Trespass To Chattels, And Dispossession, Use, Or Intermeddling Of Chattels**

"When a federal court exercises its supplemental jurisdiction over state law claims, the substantive law of that state controls. St. George v. Mak, 842 F.Supp. 625, 633 (D.Conn. 1993) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). "It is well-settled law in Connecticut that the general burden of proof in civil actions is on the plaintiff, who must prove all the essential allegations of the complaint" by a preponderance of the evidence. Schmidt v. Breitenbach Investments II, LLC, 2009 WL 3737271, 3-4 (Conn.Super. Sept. 4, 2009) (attached as Ex. Q) (quoting Gulycz v. Stop & Shop Cos., 29 Conn.App. 519, 523, cert. denied, 224 Conn. 923, 618 A.2d 527 (1992)). "In Connecticut, the essentials of an action for trespass are:

> (1) ownership or possessory interest in land by the plaintiff;
>
> (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest;
>
> (3) done intentionally; and
>
> (4) causing direct injury."

Boyne v. Glastonbury, 110 Conn.App. 591, cert. denied, 289 Conn. 947, 959 A.2d 1011 (2008).

At the time of Edward Peruta's and the police officers' arrival at the Condominium on October 30, 2007, Valadez held actual, albeit unlawful, possession of the Condominium. She never paid rent and had no excusive claim to any part of the Condominium property. (Ex. A at 25-26, 31, 38-39, 49, 50, 61, Valadez Dep.; Ex. B, Harris-Valadez Contract; Ex. C, Harris Statement; Ex. K, Deed.) Valadez had accepted ten-thousand dollars ($10,000.00) from Jeffrey

14

Harris in October 2005 to vacate the Condominium.  Valadez' reliance on a status as a common law wife to assert a right to the Condominium is unrecognized in Connecticut.  She was allowed to return to stay at Harris' Condominium after signing the October 2005 agreement to vacate only while she had been seeking medical treatment.  (Ex. C, Harris Statement.)  She then locked Harris, the owner of the Condominium, out of the Condominium on October 28, 2007.  (Ex. A at 32, 34-35, 51, Valadez Dep.)  When Edward Peruta and the police officers arrived at the Condominium on October 30, 2007, Valadez held actual possession of property whose owner she had locked out and refused entry.

Edward Peruta held a Power of Attorney on behalf of the Condominium owner, Jeffrey Harris, which granted him the same right to enter upon the property of 29-A Carillon Drive as Jeffrey Harris on October 30, 2007.  (Ex. D, Power of Attorney.)   Valadez, as she did to Jeffrey Harris on October 28, 2007, attempted to lockout and prevent Edward Peruta from exercising his legal right to enter the property on October 30, 2007.  On both occasions, Valadez acted unlawfully in locking out the exclusive owner and legal possessor of the Condominium.

Jeffery Harris, due to his status as property owner, and Edward Peruta, due to the Power of Attorney he held for the property owner, could not have trespassed on the Condominium property.  Valadez had no right to prohibit Harris from entry to the Condominium at any time, including October 28, 2007, when she locked him out, and she had no right to prohibit Edward Peruta, or his invitee, Lois Peruta, from entry to the Condominium after Harris signed the Power of Attorney on October 30, 2007.  While Valadez may have held actual possession of the Condominium due to her illegal conduct, she did not hold exclusive possession, a necessary element to her claim of trespass.  For this reason, Plaintiff's claim of trespass to land against the Defendants fails.

15

Plaintiff similarly fails in her proof that the Defendants dispossessed her of her chattels, trespassed upon her chattels, and used, or intermeddled with her chattels.

First, Jeffery Harris, due to his status as property owner, and Edward Peruta, due to the Power of Attorney he held for the property owner, in combination with the absence of any claim Valadez can make to exclusive possession of an area within the Condominium, negates the exclusivity of Valadez' ownership of any of the tangible items within the Condominium, meaning that Harris, as the owner, and Edward Peruta, having a Power of Attorney, could not have trespassed upon, dispossessed, used, or intermeddled with any tangible items within the Condominium as they owned in full, or, at the least, had rights equal to or greater than Valadez to the items.

Second, Plaintiff cannot carry her burden of proof that the Defendants touched or damaged any items within the Condominium. The Condominium was cluttered and inhabitable when Edward Peruta entered on October 30, 2007. The only witness to the events alleged inside the Condominium, Sharon Hartstein, denied seeing Edward Peruta or Lois Peruta touch anything inside the Condominium on October 30, 2007, and October 31, 2007. (Ex. G at 47-48, 54, 72, 116, Hartstein Dep.; Ex. H, Peruta Aff. ¶ 12; Lois Peruta Aff. ¶ 7; Ex. A at 54, 90-91, 173, Valadez Dep.). See Breitenbach Investments II at 4 (Ex. Q) ("While the record may support a finding that the plaintiff has suffered damage to her property, the plaintiff has failed to sustain her burden of proving, by a fair preponderance of the evidence, that the defendant, Dorex, caused the damage. The evidence is speculative that Dorex, and not others, caused the damage at issue.").

In conclusion, Valadez' mere presence at the Condominium on October 30, 2007, and October 31, 2007, does not support a trespass upon land or chattel claim. Harris had full legal

16

possession and ownership of the Condominium and its contents.  Valadez enjoyed no exclusive possession of any part of the Condominium, except the possession she gained by the unlawful lockout of Harris on October 28, 2007.  As an actual possessor without exclusive possession of the Condominium, Valadez had only one remedy against the Condominium owner who by definition could not trespass on his exclusive property, and that remedy is found in Connecticut General Statutes, § 47a-43.

The exclusive remedy provided by law for a person in actual but not legal possession of property against a person who has full legal possession of the property is through Connecticut General Statutes, § 47a-43, because a person who has full legal possession of property cannot, by definition, be a trespasser and the person making the complaint cannot, by definition, be in exclusive possession of the property when another has full legal ownership that has not been limited by contractual agreement with any other party.  Valadez' failure to pursue the state law remedy available to her demonstrates that she was aware that her claim to possession and property damages would not be sustained through the expedited process available in state court. See New England Astro Optics, Inc. v. Beatman, 1999 WL 104609 * 1 (Conn.Super. 1999 Feb. 22, 1999) (attached as Ex. R) ("Entry and Detainer is a creature of statute and is in derogation of the common law.")

### E. Plaintiff's Claims For Emotional Distress Fail As A Matter Of Law

The failure of Plaintiff's claims that the Defendants committed the common law torts of assault and/or battery, false imprisonment and unlawful restraint, and trespassed as alleged in subsections (c) through (f) of paragraph 43 in Count Five, mandates judgment as a matter of law against Plaintiff's claims of negligence, recklessness, and emotional distress.

17

### III. CONCLUSION

For the foregoing undisputed facts and arguments of law, the Defendants EDWARD A. PERUTA, LOIS PERUTA, AND JEFFREY HARRIS respectfully request that summary judgment enter in their favor as to Count Five of the Complaint.

```
                                DEFENDANTS
                                EDWARD A. PERUTA
                                LOIS PERUTA
                                JEFFREY HARRIS

                          BY:   /s/ Rachel M. Baird
                                Rachel M. Baird (ct12131)
                                Law Office of Rachel M. Baird
                                379 Prospect St
                                Torrington CT 06790-5238
                                Tel: (860) 626-9991
                                Fax: (860) 626-9992
                                Email: rbaird@rachelbairdlaw.com
```

### CERTIFICATION OF SERVICE

I HEREBY CERTIFY THAT on January 14, 2010, the foregoing Memorandum of Law in Support of Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

```
                                /s/ Rachel M. Baird
                                Rachel M. Baird
                                Commissioner of the Superior Court
```